UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 02-177 (JNE/RLE)
Civil No. 05-303 (JNE)

| | | |
|---|---|---|
| RICHARD CUNNINGHAM, Petitioner, | ) | GOVERNMENT'S RESPONSE TO THE MOTION UNDER 28 U.S.C. § 2255 |
| v. | ) | |
| UNITED STATES OF AMERICA, Respondent. | ) | |

The Respondent, through its attorneys, Thomas B. Heffelfinger, United States Attorney, and Michael L. Cheever, Assistant United States Attorney, submits this response to the Motion under Title 28, United States Code, Section 2255 filed pro se by Richard Cunningham.

**FACTUAL AND PROCEDURAL BACKGROUND**

From September, 1998, through November, 1999, Richard Cunningham used fake sight drafts and a fake money order for debts he did not wish to pay, such as taxes and child support, and to swindle businesses into giving him something for nothing. Also during this time, Cunningham retaliated against many of the individuals and entities who refused to accept his bogus payments by filing false documents with the Internal Revenue Service ("IRS") which claimed they paid or received large amounts of foreign currency in a "suspicious transaction." The factual background, with cites to the record, is set forth in the Brief of Appellee filed in the criminal case with the Eighth Circuit. 2003 WL

23096708 *3-*24 (Sept. 9, 2003).

Cunningham was charged in a seventeen-count indictment on June 4, 2002. Counts 1 through 4, 7, 8, and 13 through 17 charged him with passing fictitious obligations in violation of Title 18, United States Code, Section 514(a)(2). Counts 5, 6, and 9 through 12 charged him with filing false statements with the Internal Revenue Service in violation of Title 26, United States Code, Section 7206(1).

Cunningham proceeded to trial which was held from January 7 through January 9, 2003, before this Court. The jury returned its verdict on January 10, 2003, finding Cunningham guilty on all counts.

Cunningham's sentencing hearing was held on May 9, 2003. His guideline range was found to be 46 to 57 months. Judgment at 2, 7. Cunningham was sentenced to 52 months imprisonment on the eleven fictitious obligations counts. He was sentenced to the statutory maximum term of three years imprisonment on the six false statement counts. Each term of imprisonment is to be served concurrently with the others.

Cunningham appealed this Court's judgment. He argued the evidence was insufficient to support any of the convictions on Counts 1 through 17. On February 26, 2004, the Eighth Circuit affirmed this Court. United States v. Cunningham, 2004 WL 358933 (8th Cir. 2004) (unpublished). Cunningham did not petition to the

Supreme Court for a writ of certiorari.

Cunningham timely filed his motion pursuant to Title 28, United States Code, Section 2255 on February 10, 2005. Cunningham is currently incarcerated at FCI Sandstone in Minnesota.

**CUNNINGHAM'S CLAIMS**

Cunningham asserts twenty-four grounds for relief. In grounds one through twenty-three, Cunningham challenges this Court's judgment as well as various matters leading up to it or underlying it such as this Court's jurisdiction, his arrest, the jury instructions, and his sentence. In ground twenty-four, Cunningham seems to complain that the Eighth Circuit's decision was not selected for publication in the Federal Reporter.

## I. CUNNINGHAM FAILED TO RAISE ANY OF GROUNDS ONE THROUGH TWENTY-THREE ON APPEAL AND THEREFORE WAIVED THE ISSUES.

Cunningham's first twenty-three grounds relate to matters which occurred in this Court prior to his appeal. Such claims, if they were to be made, should have been raised on direct appeal from his conviction, and Cunningham offers no reason for his failure to do so.

It is well established that a section 2255 motion "may not do service for an appeal," and is not a vehicle by which a petitioner may raise an issue which should have been raised on direct appeal. United States v. Frady, 456 U.S. 152, 162 (1982). Matters which could have been raised on direct appeal will not be considered under section 2255. See United States v. Wilson, 997 F.2d 429, 431

(8th Cir. 1993) ("A § 2255 motion is not a substitute for direct appeal . . . ."); Anderson v. United States, 25 F.3d 704, 706 (8th Cir. 1994) ("A petitioner simply cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not.").

This Court reviews claims regarding unappealed errors to which no contemporaneous objection was made under the "cause and actual prejudice" standard. A "convicted defendant must show both (1) 'cause' excusing his double procedural fault, and (2) 'actual prejudice' resulting from the error of which he complains." Frady, 456 U.S. at 168; see also Auman v. United States, 67 F.3d 157, 161 (8th Cir. 1995). Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170 (emphasis in original). Petitioner gives no reason for failing to appeal any of these issues and therefore cannot satisfy the "cause and prejudice" standard.

Cunningham's claims are also self-defeating. In grounds one through six, Cunningham contends this Court has no authority in Minnesota, the Court is invalid, and the United States cannot be sued. Yet he brought this civil action in this Court and moves this Court to grant him relief. Cunningham is asking for his own motion to be denied.

Other claims, such as grounds seven, nine, and ten, have nothing to do with the conviction in this case. To the extent Cunningham challenges this Court's jurisdiction over his criminal case, as in grounds eight, fourteen, twenty, and twenty-two, the argument is frivolous. The Court's jurisdiction was properly exercised pursuant to 18 U.S.C. § 3231 which gives the district courts original jurisdiction over "all offenses against the laws of the United States." E.g., United States v. Rosnow, 977 F.2d 399, 412 (8th Cir. 1992); United States v. Huguenin, 950 F.2d 23, 25 n.2 (1st Cir. 1991).

Cunningham claims in ground twenty-one that his sentence was imposed in violation of the Sixth Amendment. This claim is addressed more fully later in this memorandum.

As to each of Claims one through twenty-three, Cunningham could have raised the issue in his original appeal. He has not shown cause for his failure to do so. Neither has he shown there was any error which worked to his substantial disadvantage. His motion on these grounds should be denied.

## II. CUNNINGHAM'S CLAIM IN GROUND TWENTY-ONE SHOULD ALSO BE DENIED BECAUSE BLAKELY AND BOOKER DO NOT PROVIDE A BASIS FOR RELIEF IN THIS CASE.

Richard Cunningham contends in ground twenty-one of his motion that this Court violated his Sixth Amendment rights. He indicates this Court erred by applying enhancements under the Sentencing Guidelines based on its own findings rather than upon admissions of

the defendant or findings by a jury. In his brief in support of the motion, Cunningham cites explicitly to Blakely v. Washington, 124 S. Ct. 2531 (2004). Cunningham's Brief at 3, 5. The decision in Blakely must be read together with the Supreme Court's more recent decision in United States v. Booker, 125 S. Ct. 738 (2005).

Given the Supreme Court's recent decision in Booker, Cunningham essentially claims constitutional error in his sentence because it was based on facts found by the district court and imposed under the mandatory Guidelines regime.

In Blakely, the Supreme Court held that the Sixth Amendment prohibits sentences greater than "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" 124 S. Ct. at 2537 (emphasis in original). Recently, the Supreme Court, in Booker, held the federal guidelines' system of judge-found enhancements violated the Sixth Amendment as construed by Blakely. Booker, 125 S. Ct. at 749-50. To remove this Sixth Amendment impediment, the Supreme Court excised Title 18, United States Code, Section 3553(b)(1), the provision of the Sentencing Reform Act that had made the Guidelines mandatory. Id. at 756-57. In so doing, the Supreme Court thereby rendered the Guidelines effectively advisory.

**A. The Decisions in Blakely and Booker Do Not Apply Retroactively on Collateral Review.**

The decisions in Blakely and Booker offer no relief to Cunningham in this case because they do not apply retroactively on

collateral review. The Supreme Court has long held its new constitutional decisions are not necessarily applicable to proceedings that were completed when the new decisions were rendered. See Allen v. Hardy, 478 U.S. 255 (1986) (jury selection rule of Batson v. Kentucky, 476 U.S. 79 (1986), not applicable to cases on collateral review); Solem v. Stumes, 465 U.S. 638 (1984) (custodial interrogation rule of Edwards v. Arizona, 451 U.S. 477 (1984), not applicable to cases on collateral review); Michigan v. Payne, 412 U.S. 47 (1973) (prophylactic sentencing rule of North Carolina v. Pearce, 395 U.S. 711 (1969), not retroactive); Halliday v. United States, 394 U.S. 831 (1969) (guilty plea acceptance rule of McCarthy v. United States, 394 U.S. 459 (1969), not retroactive); Stovall v. Denno, 388 U.S. 293 (1967) (identification procedure decisions of United States v. Wade, 388 U.S. 218 (1967), and Gilbert v. California, 388 U.S. 263 (1967), not retroactive); Johnson v. New Jersey, 384 U.S. 719 (1966) (interrogation rules of Escobedo v. Illinois, 378 U.S. 478 (1964), and Miranda v. Arizona, 384 U.S. 436 (1966), not retroactive); Tehan v. Shott, 382 U.S. 406 (1966) (Griffin v. California, 380 U.S. 609 (1965), rule against commenting on defendant's failure to testify not retroactive); Linkletter v. Walker, 381 U.S. 618 (1965) (exclusionary rule of Mapp v. Ohio, 367 U.S. 643 (1961), not retroactive).

The governing rule was set forth in Justice O'Connor's plurality opinion in Teague v. Lane, 489 U.S. 288 (1989). Justice

O'Connor endorsed Justice Harlan's principles "that new rules should always be applied retroactively to cases on direct review, but that generally they should not be applied retroactively to criminal cases on collateral review." Id. at 303. The latter principle is subject to only two narrow exceptions, which Justice O'Connor adopted from Justice Harlan with some modification. First, a new rule should be applied to cases on collateral review if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." Id. at 311. Second, a new rule should be applied retroactively if it implicates fundamental fairness in a way that seriously affects the likelihood of an accurate conviction. Id. at 312-13.

The Supreme Court has limited the class of new rules which concern fundamental fairness to "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." Saffle v. Parks, 494 U.S. 484, 495 (1990). It has stated: "Whatever the precise scope of this exception, it is clearly meant to apply only to a small core of rules requiring 'observance of those procedures that . . . are implicit in the concept of ordered liberty.'" Graham v. Collins, 506 U.S. 461, 478 (1993) (quoting Teague, 489 U.S. at 311). In Teague, Justice O'Connor stated: "Because we operate from the premise that such procedures would be so central to an accurate determination of

innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge." 489 U.S. at 313.[1]

Although the relevant portion of Justice O'Connor's opinion was a four-justice plurality opinion, her Teague standards have been applied by a majority of the Supreme Court, with some modification for sentencing rules, in a number of cases. See, e.g., O'Dell v. Netherland, 521 U.S. 151, 156-57 (1997); Graham v. Collins, 506 U.S. 461, 466-67, 477 (1993); Sawyer v. Smith, 497 U.S. 227, 229 (1990).

As the Court explained in O'Dell v. Netherland, "[t]he Teague inquiry is conducted in three steps." 521 U.S. at 156. The first step is to determine whether the defendant's conviction became final prior to the new decision he invokes. If it did not, he is entitled to the benefit of the decision. If it did become final before the new decision, the second step is to determine whether the decision adopts a new rule. If it does not, again he is entitled to the benefit of the decision. If it did adopt a new rule, the third step is to determine whether one of the two narrow exceptions applies. If either exception applies, the defendant is entitled to the benefit of the new decision. If neither exception

[1]The Supreme Court, despite many decisions addressing new rules of constitutional law, has yet to find any retroactive under the Teague rule. See Levan v. United States, 128 F. Supp. 2d 270, 277-78 (E.D. Pa. 2001) (collecting cases).

applies, the defendant is not entitled to the benefit of the decision and the inquiry ends.

In this case, Cunningham's conviction became final on May 27, 2004, ninety days after the Eighth Circuit affirmed this Court's judgment. Clay v. United States, 537 U.S. 522, 525 (2003). The conviction was therefore final before the Supreme Court's decisions in Blakely, on June 24, 2004, and Booker, on January 12, 2005. Thus, the inquiry moves to the second step.

The Supreme Court has defined a "new rule" as one that was not "dictated by precedent existing at the time the defendant's conviction became final." Graham v. Collins, 506 U.S. at 467 (quoting Teague v. Lane, 489 U.S. at 301) (emphasis in original). A rule may be new even though it finds general support in prior cases. Sawyer v. Smith, 497 U.S. at 236. The test is whether, at the time Blakely and Booker were decided, a "reasonable jurist" would have felt "compelled" to adopt the rules each stated. O'Dell v. Netherland, 521 U.S. at 164; Graham v. Collins, 506 U.S. at 477. Under this standard, Blakely and Booker each clearly adopted a new rule.

Four years before Blakely and Booker, in Apprendi, the Supreme Court held that any fact which increases a statutory maximum sentence must be determined by a jury. Subsequently, every circuit court of appeals addressed whether this rule applied to determinations made, as in this case, in order to calculate a

sentence under the guidelines within the statutory maximum. Without exception, every court held that the Apprendi rule was inapplicable to the Sentencing Guidelines, so long as the final sentence did not exceed the statutory maximum sentence on any count of conviction.[2] That body of law makes unquestionable that the results in Blakely and Booker were not "dictated" by the Apprendi precedent, and reasonable jurists were not compelled so to conclude.

Because Blakely and Booker constitute new rules of procedure, the question remains whether they are subject to either of the exceptions outlined in Teague -- for new substantive rules which change the definition of criminal conduct, or for "watershed" rules addressed to matters of fundamental fairness.

The fact that Blakely is not subject to either of these exceptions was essentially decided by the Supreme Court on the same day that it decided Blakely. See In re Dean, 375 F.3d 1287, 1290 (11th Cir. 2004) ("[T]he Supreme Court has strongly implied that

---

[2] See, e.g., United States v. Casas, 356 F.3d 104, 128 (1st Cir. 2004); United States v. Luciano, 311 F.3d 146, 153 (2d Cir. 2002); United States v. Parmelee, 319 F.3d 583, 592 (3d Cir. 2003); United States v. Cannady, 283 F.3d 641, 649 & n.7 (4th Cir. 2002); United States v. Floyd, 343 F.3d 363, 372 (5th Cir. 2003); United States v. Tarwater, 308 F.3d 494, 517 (6th Cir. 2002); United States v. Merritt, 361 F.3d 1005, 1015 (7th Cir. 2004); United States v. Banks, 340 F.3d 683, 684-65 (8th Cir. 2003); United States v. Ochoa, 311 F.3d 1133, 1134-36 (9th Cir. 2002); United States v. Mendez-Zamora, 296 F.3d 1013, 1020 (10th Cir. 2002); United States v. Ortiz, 318 F.3d 1030, 1039 (11th Cir. 2003); United States v. Pettigrew, 346 F.3d 1139, 1147 n.18 (D.C. Cir. 2003).

Blakely is not to be applied retroactively.").

In Schriro v. Summerlin, 124 S. Ct. 2519 (2004), the Court held that the decision in Ring v. Arizona, 536 U.S. 584 (2002), does not apply retroactively to cases already final on direct review. In Ring, the Court applied the Apprendi principle to a death sentence imposed under the same Arizona sentencing scheme at issue in Summerlin. The Ring Court concluded that, because Arizona law authorized the death penalty only if an aggravating factor was present, Apprendi required the existence of such a factor to be proved to a jury rather than to a judge.

In Summerlin, the Court determined that Ring presented a new rule of procedure which was not retroactively applicable under the Teague formulation.[3] First, it confirmed that Ring (and by extension, Apprendi) is in fact a procedural rule subject to Teague. The Court explained that substantive rules "narrow the scope of a criminal statute by interpreting its terms [or] place particular conduct or persons covered by the statute beyond the State's power to punish . . . ." 124 S. Ct. at 2522. In contrast, rules of procedure "do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated

[3]In Teague v. Lane, 489 U.S. 288 (1989), the Court held that "new rules should always be applied retroactively to cases on direct review, but that generally they should not be applied retroactively to criminal cases on collateral review." 489 U.S. at 303.

procedure might have been acquitted otherwise." Id. at 2523. In a statement directly applicable to Blakely and Booker, the Court concluded, "rules that regulate only the *manner of determining* the defendant's culpability are procedural." Id. (emphasis in original). "Ring altered the range of permissible methods for determining whether a defendant's conduct is punishable by death, requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decision-making authority in this fashion are prototypical procedural rules . . . ." Id.

The Summerlin Court also rejected the contention that the jury requirement for sentencing factors established in Apprendi and Ring was a "watershed" rule demanding retroactive application. Addressing that exception, the Court stated "[t]hat a new procedural rule is 'fundamental' in some abstract sense is not enough; the rule must be one 'without which the likelihood of an accurate conviction is seriously diminished.' This class of rules is extremely narrow, and 'it is unlikely that any . . . 'ha[s] yet to emerge.' Tyler v. Cain, 533 U.S. 656, 667 n.7 (2001) (quoting Sawyer v. Smith, 497 U.S. 227, 243 (1990))." Summerlin, 124 S. Ct. at 2523. The Court held that the jury requirement is not one: "When so many presumably reasonable minds continue to disagree over whether juries are better factfinders *at all*, we cannot confidently say that judicial factfinding *seriously* diminishes accuracy." Id.

at 2525 (emphasis in original).

This result is directly applicable to the Blakely and Booker holdings. If, as in Summerlin, the requirement that a jury determine an aggravating factor which leads to imposition of the death penalty is not so fundamental to require retroactive application, surely the same holding applies to the guideline enhancement issues to which Blakely and Booker are addressed.[4]

Moreover, courts of appeals having considered the issue have concluded neither Booker nor Blakely announced a watershed procedural rule retroactively applicable to cases on collateral review. As succinctly addressed by the Seventh Circuit:

> Booker does not in the end move any decision from judge to jury, or change the burden of persuasion. The remedial portion of Booker held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the sixth amendment so long as the guideline system has some flexibility in application. As a practical matter, then, petitioners' sentences would be determined in the same way if they were sentenced today;

---

[4]Indeed, prior to Summerlin, every appellate court to address the issue, applying similar reasoning, held that the decision in Apprendi is not retroactively applicable in cases on collateral review. See, e.g., Sepulveda v. United States, 330 F.3d 55, 63 (1st Cir. 2003); Coleman v. United States, 329 F.3d 77, 90 (2d Cir.), cert. denied, 124 S. Ct. 840 (2003); United States v. Jenkins, 333 F.3d 151 (3d Cir.), cert. denied, 124 S. Ct. 350 (2003); United States v. Sanders, 247 F.3d 139 (4th Cir. 2001); United States v. Brown, 305 F.3d 304, 307-10 (5th Cir. 2002); Goode v. United States, 305 F.3d 378, 382-85 (6th Cir. 2002); Curtis v. United States, 294 F.3d 841, 842-44 (7th Cir. 2002); United States v. Moss, 252 F.3d 993, 997-1001 (8th Cir. 2001); United States v. Sanchez-Cervantes, 282 F.3d 664, 667-71 (9th Cir. 2002); United States v. Mora, 293 F.3d 1213, 1218-19 (10th Cir. 2002); McCoy v. United States, 266 F.3d 1245, 1256-58 (11th Cir. 2001).

> the only change would be the degree of flexibility judges would enjoy in applying the guideline system. That is not a "watershed" change that fundamentally improves the accuracy of the criminal process.

McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005); see also Humphress v. United States, 2005 WL 433191, *6-*7 (6th Cir. Feb. 25, 2005); United States v. Lucero, 2005 WL 388731 (10th Cir. Feb. 18, 2005) (unpublished); Varela v. United States, 2005 WL 367095, *2-*3 (11th Cir. Feb. 17, 2005).

The Eighth Circuit's retroactivity analysis of Apprendi is dispositive of the retroactivity analysis of Blakely and Booker. As the Eighth Circuit emphasized in United States v. Moss, the prototypical example of a watershed ruling is the "sweeping rule" announced in Gideon v. Wainwright, 372 U.S. 335 (1963), requiring counsel be provided in all criminal trials for serious offenses. 252 F.3d 993, 998 (8th Cir. 2001). Moss reasoned Apprendi did "not fall within the same vein as Gideon's pronouncement that one who is unable to afford a lawyer '*cannot* be assured a fair trial unless counsel is provided for him.'" Id. (emphasis in original). The Eighth Circuit concluded:

> we do not believe Apprendi's rule recharacterizing certain facts as offense elements that were previously thought to be sentencing factors resides anywhere near that central core of fundamental rules that are absolutely necessary to insure a fair trial.

Id. Accordingly, this Court should follow Moss to hold Blakely and Booker are simply clarifications of Apprendi, and are unavailable to Cunningham on collateral review because his conviction became

final before Blakely was decided on June 24, 2004, and Booker, on January 12, 2005.

**B. Cunningham's Sentence Would Not Be Affected if Booker Were Applied.**

Even if Cunningham had raised a Blakely or a Booker claim on direct appeal, it would not affect Cunningham's sentence. The claim would be reviewed for plain error, and he could not show his substantial rights were affected by this Court's treatment of the Sentencing Guidelines as mandatory rather than advisory.

Prior to the decision in Booker, the Supreme Court held in Blakely it was error for a sentencing court to apply the Sentencing Guidelines in a mandatory fashion and apply guideline enhancements based on judge-made findings.[5] In light of Booker it no longer is error for the sentencing court to impose guideline enhancements based on judge-made findings. Instead, the error is for sentencing courts to apply the Sentencing Guidelines in a mandatory, rather than advisory, manner. See United States v. Sayre, 2005 WL 544819, *1 (8th Cir. Mar. 9, 2005).

As the First Circuit Court of Appeals recently articulated the issue:

> The Booker error is that the defendant's Guidelines sentence was imposed under a mandatory system. The error is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a

[5]This was true, at least where the final sentence exceeded the applicable "statutory maximum" which could be supported by jury findings or the defendant's admissions.

> sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system.

United States v. Antonakopoulos, 2005 WL 407365 (1st Cir. Feb. 22, 2005); United States v. Rodriguez, 2005 WL 272952 (11th Cir. Feb. 4, 2005) (error is not imposition of guideline enhancements based on judicial fact finding; error is application of the guidelines as mandatory).

The distinction is significant in determining whether there was prejudice in this case. The question is whether, had Cunningham been sentenced using advisory guidelines, his sentence would have been lower. In this case, there is no basis for finding it would have been. The applicable guideline range found by the Court was 46 to 57 months imprisonment. Because Cunningham was sentenced to 52 months imprisonment, it appears this Court would not have used its discretion in applying the guidelines as advisory to impose a lower sentence. Otherwise, it would have used its discretion within the guideline range to impose a lower sentence. See Sayre 2005 WL 544819, *2 (remand "futile" where district court treated guidelines as mandatory but reported upward.)

Even if Cunningham had raised a Blakely or a Booker issue on direct appeal, he would not be entitled to resentencing because he could not meet the plain-error standard of showing his substantial rights were affected. His motion under section 2255 should be denied.

**III. SECTION 2255 DOES NOT PROVIDE RELIEF FOR CUNNINGHAM'S CLAIM IN GROUND TWENTY-FOUR.**

Richard Cunningham's claim in ground twenty-four of his motion is unclear. He seems to contend either that the Eighth Circuit should have selected its decision in his case for publication in the Federal Reporter or that the Eighth Circuit's Rule limiting citation to unpublished opinions is unconstitutional, 8th Cir. R. 28A(i). In either case, Section 2255 does not provide grounds for relief from such an objection.

**CONCLUSION**

For all the foregoing reasons, the Section 2255 petition of Richard Cunningham should be denied.

Dated: March 16, 2005

Respectfully submitted,

THOMAS B. HEFFELFINGER
United States Attorney

S/ Michael L. Cheever

BY: MICHAEL L. CHEEVER
Assistant U.S. Attorney
Attorney ID No. 192582